We'll hear argument next in Case 09-11-12-1, J.D.B. v. North Carolina. Ms. Blackman. Mr. Chief Justice, and may it please the Court, J.D.B. was only 13 years old when he was taken out of his middle school classroom and escorted to a closed-door interrogation conducted by outside law enforcement regarding a matter that did not take place on school property. He was isolated from his family, who had already demonstrated an interest in this investigation and sought to shield him from the police. He was not advised that he was free to leave or free not to answer questions until he had already incriminated himself. The restrictions on J.D.B.'s freedom of movement, which existed because of his youth, were heightened by the manner in which this officer chose to conduct this interrogation. And the expected deference to authority figures, categorically characteristic of children, were taken advantage of by the manner in which this officer chose to conduct the interrogation. No, Ms. Blackman, I'm not clear on what you are proposing. Is there to be one different Miranda requirement rule for all minors? Or is there to be one for, what, 20-year-olds, 19-year-olds, 18-year-olds, 17, 16? This one is 13. Do we calibrate that finally? Justice Scalia. Or do we just say, you know, what would a minor, I don't know, a general minor regard as restrictions upon his departure? Justice Scalia, what we are proposing is that the test be a court may consider age in determining whether a reasonable person in the juvenile position. I understand that. So we are not. So you mean 15, 14, 13, 13 and a half, right? We did not suggest that it be calibrated by age, although in State court jurisdictions many of them are and are not finding that a difficult test to perform. If not calibrated by age, how is it to be calibrated? It is to be the exercise of recent judgment by the judge taking into account common sense, our community experience. How is the law enforcement officer going into the confrontation, going to know whether a judge is going to be applying a 15-year-old rule, a 13-year-old rule or whatever? Clearly, in the jurisdiction in which he practices, he should be aware of the fact that a court utilizes that type of rule. But we are not suggesting that that be done. What a court is examining is relative youngness, relative oldness. Why isn't all that subsumed under the voluntariness rule? As this Court has frequently recognized, the voluntariness inquiry is more difficult for courts to perform than the Miranda custody one. And you have also recognized that the court performs the voluntary test. I mean, not the interrogating officer, as Justice Scalia's questions point out. The police officer plays a role in the voluntariness also. And the police officer must be assessing whether the circumstances may be giving rise to an involuntary confession. Scalia. What about mental deficiency? If age should be one of the factors deciding whether the individual regarded himself as in custody or not, why shouldn't mental deficiency be so as well? Is there any basis in principle for not – I mean, once you do this, don't you in effect say that it is a subjective inquiry whether the particular individual regarded him or herself as being in custody? Isn't that the basis of what you're arguing? No. No? Why is age different for mental deficiency, for example? Age is different because, number one, it involves restrictions on freedom of movement. So the circumstances of the interrogation are going to be understood and interpreted differently by a child than it would be by an adult. Secondly, we're talking about cognitive differences which exist between children and adults, which affects their perception and understanding. You could say both of those things about the mentally deficient. They may regard themselves as unfree to leave, and they have cognitive deficiencies. As far as I know, there hasn't been the recognition in the law that there is, as to children, that groups such as the mentally handicapped are unable to speak. Well, what about this test, which comes from three cases, the first being Berkmer, the second Stansbury, and the third, I'll tell you in a second? It is that those to the — in considering a reasonable person for this purpose and avoiding subjective states of mind, you would look at objective circumstances known to both the officer and the suspect that are likely relevant to the way a person would understand his situation. All right? So both would be — both mental illness and age and, I don't know, maybe whether you speak English, and a lot of other things would be relevant, provided they are things that are relevant to how a person would understand his situation and are known to both the officer and the individual. The third case, of course, is my dissent in Alvarez. But nothing in the majority conflicts with that, that I can see, except the holding. I thought I lost the case, but apparently it's up again. So I don't see why that isn't a perfectly good test. But if you're not going to support it, then I've got no support. Well, we're simply making the point that there's not necessarily going to be a floodgate opening. And we have not. No, no, but I mean what Justice Scalia was really asking is, do you favor something like this test that I read, which is open as to circumstance? Anything could fit in that blank, as long as both policemen and the individual know it and it is relevant as to how he understands the circumstance, whether he's likely free to go or not. Conceptually, absolutely. Yes. Thank you. Even if you said no, you're pushing us there, because there's no basis for treating childhood any differently from these other factors. So basically, you're saying, Justice Breyer would call it objective circumstances. You know, whether you're mentally deficient, I would call that the subjective condition of the person being held in custody. And I think that's what we meant by the phrase objective circumstances. But you want objective circumstances to include the character of the person being held in custody, whether he's mentally deficient, whether he's schizophrenic, known to the police, you know, whatever factors, right? Those are all objective circumstances. Your Honor, what we are talking about are a complex of characteristics which are unique to children, and that's what we're examining in this case. Ginsburg. It's not what is complex about a juvenile investigator. That's what this police officer was. So he's investigating a juvenile for juvenile justice purposes. And I think there's hardly anything that could be more objective than that. This case has child written all over it. It's an investigator who deals with children. The proceeding is going to be a juvenile proceeding. How can you not take that into account? Whatever these other factors may involve. But here it seems to me so graphic because this police officer dealt only with juveniles and he investigated juveniles. I agree completely. This officer was assigned the case because it had already been determined that a juvenile was involved. This is the population that he deals with on a daily basis. He certainly has a basis on which to assess how JDB's youth was factoring into this interrogation. Kennedy. And is it your point that he has to do something more than read the standard Miranda warning? Suppose he read the standard Miranda warning, end of case, as far as you're concerned? Obviously, his age would factor into whether there was a valid waiver. But, yes, he has got to Mirandize or otherwise. But it doesn't follow from your theory that we have to have a we have to change the warning? Not necessarily. I mean, some children will not understand Miranda warnings, just as some adults don't understand Miranda warnings. But children nonetheless have to be given the opportunity to be told of their rights so that they can at least have the opportunity to make an informed decision. Are you asking trial judges to make a, to do something that is realistic? Do you think, let's take a hypothetical trial judge who, let's say, is 60 years old and has an IQ of, that's at least an average IQ. And now you're asking this trial judge to decide whether under particular circumstances, let's say, a 14-year-old with an IQ of 85 would appreciate under particular circumstances that he or she was free to leave? Your Honor, can I? A trial judge can really do that? State courts have been performing this analysis now for several decades, and they haven't indicated that they have difficulty doing so. And to the extent that they're going to do that, they're going to do that. Alito, they must have greater imaginative powers than I think I would have under those circumstances. Part of your question, Your Honor. You take a particular set of circumstances and the judge would say, if I were 13, I would not understand that I could go. However, if I were 15, I would understand I could go. Your Honor. Can you slice it like that? What we are talking about here is relative youngness and relative oldness. I mean, the empirical data demonstrates to us that the older a child is to an adult, the more adult-like they are. The younger, the farther away they are from that, the adults stick to it. We need empirical data for that? Excuse me? We need empirical data for that? Empirical data does exist. I'm just pointing that out. The closer to adulthood a child is, the more like an adult he is? I'm simply pointing out that the empirical data supports that. There are bases of knowledge from which the judge can't. Ms. Blattman, do we need either imaginative powers or empirical data to know that when a 13-year-old is brought into a room in his school, taken out of class, four people there, two were police officers, one is an assistant principal, threatened with custody, that that person is not going to feel free to take off and leave? We do not. I'm simply pointing out that there is a basis of knowledge from which courts, as well as police officers, can make the required assessment. It is so clear in this case, though. Well, sympathetic cases can make bad law. So take the same set of facts and let's hypothesize that this is a 15-year-old. Would the 15-year-old appreciate that he could go? Or make him 16? Or make him a streetwise 17-year-old? A judge should be able to consider that. And under the clear circumstances of this case, it is unlikely that a 5-year-old would be able to consider that. Scalia, when the policeman sees him, he's dressed in baggy jeans, you know, down around his thighs. And when the judge sees him, he's wearing a Buster Brown jumper suit. You don't really think that it's going to be equivalent. I'm not sure I understood the question. The whole point, the whole point of the Miranda rule, I thought, was to provide clear, objective guidelines about what the police are supposed to do. And it seems to me that one of the difficulties with your rule, however clear it may seem in this case, but it does have to apply more broadly, is that that's off the table. And now they're not only going to have to know, does this person understand it, but they're going to have to know it's not every one of these situations that's going to be in school. They're going to have to guess how old the person is. And there are differences. Some 15-year-olds know a lot more than some 17-year-olds and so on. And the facts that you're concerned about all go into the voluntariness inquiry, which is still pertinent after Miranda. Why don't we just put those facts into that inquiry and say, look, we've got one strict rule, everybody knows it, you hear it on TV all the time. If you give the Miranda warnings, that part of it's done. It doesn't change the rule itself. I mean, the rule itself remains all objective circumstances relevant to the custody determination must be considered. What it's doing is taking this out of the reasonable adult standard, which by default is the only one that can be used. And so it's not going to be muddying the waters in the sense that it is something needed in order to promote accurate fact-finding. Roberts Is it enough if the officers in this situation said, look, you're free to leave whenever you want, but, and then goes on. Or do they have to think, now, maybe a 13-year-old really doesn't think that's true, or maybe a 13-year-old really doesn't feel that he can leave if he's got the vice principal there and they want to talk. I mean, that is an objective circumstance that occurs in the course of an interrogation which is very weighty in determining if custody occurred. Roberts So you think it would not even be enough if they told the 13-year-old, look, you can leave, but I want to ask you some questions and the principal is there and he thinks, well, you know, maybe a 13-year-old is like, I'm going to get in trouble if I leave. It all depends on all of the circumstances which are arising during the course of the interrogation. But certainly advising someone that they are free to leave and advising them that they are free not to answer questions is almost half of the Miranda warning. And it is giving the child a chance to leave. Scalia What if the parent tells them not to leave? What if the parent says, you go and talk to this police officer. If you did something wrong, I want them to know about it. Talk to the officer. And whether that would factor in depends, I think, upon whether they're acting as an agent of the police. Because what we're looking at is the police officer. Scalia No, no, they're not an agent of the police, they're acting as a parent. All right. What we're examining is whether we've got a police-dominated environment and coercion in the situation and circumstances under which the child evaluates the agency's determination. Scalia Are you answering my question? No, I'm not. Obviously, the specific factors that occur in the course of any interrogation will be considered. But our focus here is upon what the police officer must do. Ginsburg Would be one relevant factor that would be considered was that nobody called the parents? It is relevant in this situation because by North Carolina law, because a custodial interrogation was occurring, there was a requirement that a parent or guardian present. Roberts How is that relevant to the Miranda inquiry? It might be relevant to the voluntariness inquiry. But I don't see whether you call the parents or not. Part of your Miranda right is not to have your parents called. What I understood the question was, was it relevant that a parent was not contacted? In this particular situation, yes, because that was going to create an independent basis upon which this statement wasn't going to be admitted. And is it an additional reason why? Roberts Independent of what? Ginsburg Independent of Miranda. Roberts Well, right. That's my whole point. Ginsburg But that is an additional reason why police officers need to be aware of what the age is of a child that they are interrogating because of independent obligations arising out of State statute. Roberts So is your answer to Justice Ginsburg that no, the fact that a parent was not notified is not relevant to the Miranda question? It may be relevant to the voluntariness question. Ginsburg No, I believe it remains relevant to the Miranda question because the question is whether he is in custody, and maybe there's something different about being in a room with a juvenile police investigator and assistant principal and being in that same room with your parents there. That is correct. Roberts Oh, so it's not just that they have to call the parent. They have to wait for the parent to show up. Ginsburg Because of State statutory requirements, here they were. Obviously, not every State has that kind of requirement. In this particular situation, there was a requirement of parental presence. Roberts That's not pertinent to the Federal law question on the Miranda warnings. Ginsburg I understand that, but I'm just explaining that independent bases may arise for which an officer has to be aware of the age, and given that, we're not imposing additional burdens. These are things that police officers have to be considering. Alito What if the age of the person being questioned is unclear? Ginsburg If the interrogation is occurring under circumstances where the officer should have known, then I think the burden remains for the officer to consider this. And that would arise from the fact that the officer is 19 years old, and the officer looks at him, and he says, well, this looks like a pretty young 19-year-old. If there is no way to verify the information that the child is giving, then the officer accepts the ID as being the age of the child that he is interrogating. Alito But what if, under my example, what if the child, what if the person looks like a minor but has an adult ID? Does the officer have an obligation to look behind that? Or the other way around, the person says, I'm 15, and the officer sees that this person has a pretty heavy beard and a. Ginsburg The officer has to proceed on the basis of his observations. I mean, objective circumstances are things that are readily apparent. There can be circumstances which tell the officer that, in fact, he is dealing with a child, either the setting, the appearance, the contact with parents and so on. Scalia Is there a good faith? Ginsburg If there is no reasonable basis upon which the officer could discern that this is a child, if he has no reason to know, then the rule that we are asking to be put into effect would not apply. Scalia Does a good faith mistake make it okay if, you know, the officer, in good faith, believes that it's not a minor and there, and proceeds accordingly? Ginsburg Yes. I mean, what we would be assessing is, are the circumstances clear such that the officer should have known? And if they simply could not ascertain it, then the rule that we are asking for would not apply. Ginsburg The way you phrase the question, you say, may the trial – whether a trial court may consider a juvenile's age in the Miranda – to make the in-custody Miranda determination, do you really mean may, so it's discretionary with each judge, whether a juvenile's age is relevant to the in-custody analysis? Ginsburg No, it is must. As with any objective circumstance, the court has to take it into account. And we can't be relegating some to a discretionary review and others to mandatory review. So, yes, if a child is involved in the case, then a court must take that into account to determine if there is custody. Sotomayor Sotomayor, you are saying, going back to the hypothetical that some of my colleagues posed, a police officer comes across an individual, looks older, looks younger, doesn't know, and just engages that person and says, come over here and let's talk for a second. Is the officer required to ask the age? Ginsburg It's a simple enough matter, but no. But I think that the circumstance that you are describing is a Terry stop. Where Miranda is not coming into play at all. Sotomayor Perhaps not, but if it's outside a school, school corner, no reasonable suspicion. Just says, come over here, kid. Is he supposed to ask the age to see if he's 19 or 18 or 17? Ginsburg We're not in a custodial interrogation setting, I think, in your question. And so Miranda is not coming into play at all. But, I mean, this is a matter. Sotomayor This is a stop with no reasonable suspicion. And the kid comes over and the officer stands him there and continues to talk to him for half an hour. Ginsburg If there is a custodial – if we have restraint on freedom of movement, which is rising to the degree of a formal arrest, it's a simple enough matter to ask. Sotomayor So why don't we go back to the test that Justice Breyer suggested, which would answer many of the hypotheticals here, that the objective fact is what is known to both. Ginsburg What is known to both. Sotomayor That way you don't get into what the 13-year-old is thinking inside himself or not, because that then becomes subjective. You don't go back to what others might think are special characteristics or subjective characteristics. You go to what's known, what's an objective factor known to both. Ginsburg Yes. But I think that we can't be encouraging willful blindness, either. And so, you know, if an officer encounters someone at a facility where only children would be, for example, like an elementary school or juvenile detention facility Sotomayor I think that's a clear – that's different. I mean, you can tell the difference between a 9-year-old, I think, and an adult, generally. Ginsburg Indeed. Sotomayor And I'm hard-pressed to think that anyone would believe that if you took a 9-year-old out of his classroom and the assistant principal walked him into a room and said, these guys want to talk to you, that that 9-year-old would think he's free to leave. Ginsburg I agree. Sotomayor All right. So objectively, that's a fact known to everyone, that it's a 9-year-old. Ginsburg Correct. Correct. I did – there have been a lot of questions that sort of presupposed that we are doing a subjective inquiry, and I think nothing could be farther from the case. What we are not doing is determining. Kennedy I guess part of my problem is just, in some respects, it's hard to put the Miranda in the context of, let's say, a 13-year-old at all. It may be, but Miranda warnings say, you have a right to remain silent. Anything you say can be used against – might be – might terrify the kid just to hear about it. I'm just wondering how the Miranda warning works here anyway. The school is in loco parentis. It has certain – it has certain obligations and privileges with respect to the student. Ginsburg Well, Miranda is the only procedure to date that anyone uses. And constitutionally, they are a – everyone is entitled to some advisement so that they can make an informed choice. I mean, whether there should be a more simplified or different Miranda warning for children is an issue for another day. But we can't simply say we're not going to do anything. We are not going to tell these children that they don't have to cooperate with the State in building a case against themselves. Alito Could I go back to an earlier question? Is it your argument that age is the only objective individual characteristic of the person being questioned that must be taken into account, or are there other objective characteristics of people being questioned who fall – that fall into the same category? I think that one's status as an inmate, for example, can be characterized as objective, and certainly that is being taken into account, because inmates share that same baseline restriction on freedom of movement that children do. And so this Court in Shatzer, for example, characterized it as what would the reasonable person in the inmate's position have understood as to his freedom of movement. So, yes, I mean, there can be other objective circumstances, individual to the person, but we will not enter into the subjective realm. Alito I don't want to use up your rebuttal time, but what are they in addition to age? For people who are not institutionalized or in school or in an environment like that, what falls into the same category as age? I think that's for other litigants to press upon this Court, upon proper records, with input from experts as to whether it relates to the special susceptibilities of children, how cognitively different they are, which is affecting their perception and judgment of what's going on about them. And those are questions for another day. If there are no other questions, I'd like to reserve my time. Roberts Thank you, counsel. General Cooper. Cooper Mr. Chief Justice, and may it please the Court, in determining custody for Miranda purposes, this Court has considered only the external surrounding circumstances of the question, and not the attributes that affect the mental processes of the person being questioned. Age fundamentally changes the reasonable person test, makes it complex, makes it more difficult, and leaves it with no logical stopping point for adding other characteristics as Justice Breyer would. Breyer Add none? No others? No other characteristics? Cooper This Court has not said that. Breyer Well, I mean, here. There's a big sign in the jail cell. The door is unlocked. When you want to leave, leave. Is he in custody? Cooper Your Honor, I think you have to look at the obvious circumstances. Breyer Is he in custody? It's a jail cell. But a big sign, go ahead, leave, go, when you want. Is he free to leave? Cooper I think he may be, Your Honor. Breyer Yes. So do I. I'll just tell you one other circumstance. He only speaks Spanish. Cooper Well, Your Honor, I think it affects. Breyer Ukrainian is the only thing he speaks. Now, are you willing to take that into account? Cooper Your Honor, I am willing to take that into account. Breyer Thank you. Now, I'll tell you another fact. Exactly the same, except there are very steep steps and he's in a wheelchair. Are you willing to take that into account? Cooper I am willing to take that into account. Breyer Okay. Then why aren't you willing to take into account an ambiguous situation as was true in Alvarado, a tough situation where it's pretty unclear, he was brought there by his parents, and there are all these things around that might suggest to a 20-year-old, yes, you could leave, but to a 12-year-old, not. If the judge can take into account whether he's in a wheelchair, whether he just speaks Ukrainian, whether, in fact, the thing has to swim through a pool and he doesn't know how to swim, I mean, all kinds of things like that, why can't he take into account in a proper situation, before he thinks he's in custody or not, things they both know, including whether he's 8 years old or 22? Cooper Your Honor, because those are obvious circumstances that everybody agrees with. Breyer And it's obvious whether he's 8 years old or 22, too. I'll tell you that. Cooper The problem is, Your Honor, you have to think like an 8-year-old or think like a 15-year-old in order to determine the situation. Breyer Right. And you have to think like a Ukrainian speaker or think like a person who knows he's in a wheelchair before you know he can't get up those steep steps. What is exactly the difference? Cooper The difference is with the Ukrainian is that you look at whether the knowledge was actually acquired. And if he speaks Ukrainian, then everyone knows that the knowledge was not acquired. People understand that someone with a seeing-eye dog, if you take him out of the room, then you have exerted coercion over the situation. I think that's different from requiring the officer to get into the mind of the reasonable 15-year-old or 16-year-old. Breyer I haven't said that. What the opinion said, which unfortunately may mean nothing unless it's promoted to the status of majority, is you look to those factors that are relevant to, known to both policemen and the suspect, and are known to be relevant to the likelihood that a person, a likely person, not him, that are known likely relevant to an ordinary person's belief, this kind of a person, that he thinks he's free to go. That's all. What's wrong with that? Stewart I think that's right, Your Honor. In age Breyer Well, if it's right, then you Stewart No. Age is an objective fact. But what they're asking us to do is to use age in a way where you're having to figure out what that person would think. And they're using age as an overgeneralization for compliance. There are lots of groups that would be naturally more compliant. Mentally challenged people, seniors in rest homes. There are all kinds of people who would be more compliant. But compliance doesn't necessarily equal coercion. Breyer You know the sentence I'm referring to in my dissent, presumably, we hope, when I've set forth the test, which was not accepted. Scalia Some people don't read dissents. He may not have read it. Breyer I live always in hope. Scalia I'm aware of it. It was a very well-worded dissent. Breyer Well, I mean, the thing about known to both and relevant to a likely belief as to whether he's in custody or not. Now, are you willing to accept that as a proper statement of the law? Stewart I'm willing to accept that, Your Honor. Breyer Fine. Well, then perfect. Stewart But I don't think it includes age in the way they want to use it in this particular situation. Ginsburg What do you mean by use it in this situation? This is a middle school. This is an officer who deals only with children. I can't imagine any setting where age isn't more apparent than we're dealing with an assistant principal, a juvenile investigator, going, deciding, the juvenile investigator deciding the place where he wants to conduct this is in a middle school. I mean, just as a matter of common sense, how can you say that we're going to have the same test for this 8-year-old as we would for the 38-year-old? Stewart Well, Your Honor, the officer may not know the age, but if he does, in this situation he did, and if the officer is in a middle school, there is still a problem with having to figure out what his actions and how they are and how they affect a juvenile of a particular age. In the situation of the 8-year-old, it may seem intuitively wrong, but the issue is you have to get into the mind of the 8-year-old. It makes it very difficult as a practical matter. The officer is going to have voluntariness problems. If the officer would read Miranda, the officer is going to have waiver problems. Officers have, in those situations, incentive to read Miranda, to get a parent. In this type of situation, the officer went there. It was a familiar location to this juvenile. It was a situation where he knew three of the people in the room. The officer asked him if he wanted to answer questions, and he said yes. The interview was relatively short. The juvenile left at the end of the interview, which is relevant. And I think in this situation, if you look at it broadly, it's very difficult for officers to tell age and to tell how age affects the situation. He probably couldn't leave the classroom either, could he, the classroom where he was studying? Your Honor, he probably could not. So the additional coercive effect of not being able to leave probably didn't make a whole lot of difference. He knew he was stuck where his parents had put him, in the school. And if the school sent him to a classroom, he had to be in the classroom. And if the school sent him to a place where he could, if he wished, voluntarily speak to the police officers, he had to be there. Well, I think that's right, Your Honor. I think you look at the school setting. We look at what is the normal school setting, just like we looked at the normal prison setting. He's in class, all the children are around him. This seventh grader was marched by the school security officer, taken away from his peers, from his class, from the gym, and he was put in a room with a closed door with an assistant principal. That is not a normal part of a school day. That's not where he is required to be. Well, Your Honor, I think feeling free to leave somewhere is not the entire test. For custody, there has to be a restraint on freedom to the degree associated with the arrest. And I think that's pretty clear from the Berkemberg case. But you say associated with a reasonable man, and when we construct the reasonable man, you're asking me to think of a 25-year-old sitting in the seventh grade social studies class. Well, Your Honor, I think a reasonable person is one of ordinary reason and intelligence who knows what custody looks like, essentially, and is informed by 45 years of case law. If you have someone who is very young, if you have someone with any other kind of disability, the voluntariness test is there. It considers age significantly in determining whether a State is voluntary. Sotomayor, haven't we repeatedly said that it's going to be very difficult for a defendant to show that his confession wasn't involuntary if there was no Miranda violation? Isn't the entire purpose of Miranda and its requirement, because there was a belief that it wasn't, that voluntariness wasn't, was not good enough, because it was such a high bar, to secure the privilege against self-incrimination? Well, Your Honor, I agree with that, but the voluntariness test was complex, because you did consider so many factors. So the Court lifted the Miranda test out of the voluntariness test, made it an objective test, a prophylactic one, clearly a different test. Sotomayor, that doesn't answer my question. If we've said if you're not in custody, it's going to be nearly impossible for you to show that your statement was involuntary, are you now accepting that with respect to age, because a 9-year-old may not feel free to leave? As opposed to a 13- or 14-year-old, that somehow we should instruct courts that age really needs to be stepped up in the voluntariness test? Well, Your Honor, in voluntariness, you don't necessarily have to have custody to prove that a statement is involuntary. And of children who are particularly young, that will come into play significantly. I think you don't have to get into turning Miranda upside down in order to prove that age is involuntary.  test? No, not in the objective Miranda test, but yes, age should be elevated as a prime consideration in the voluntariness test? Well, Justice Sotomayor, I think it is already a significant factor in the voluntariness test, and I think particularly for young children, I think you're going to see that continue to occur. General Cooper, I'm not sure how I understand, that I understand how this would be turning Miranda upside down. Miranda is already an incredibly complicated test about when those warnings need to be given, right? So there are all manner of circumstances which go into the determination of whether a person would feel free to leave, whether a person would feel as though he were in custody. A thousand things, how many people are in the room, how long the interrogation is, where the interrogation is, the particular circumstances of the interrogation. So this is not a bright-line test, and all that we would be doing here would be adding an additional objective factor to an already multifaceted inquiry. Justice Kagan, admittedly, sometimes Miranda has gray areas, because you do look at a combination of factors, but it's informed with 45 years of case law, and officers now have a pretty good idea as to what combination of factors constitute custody for Miranda purposes. What H does is now we're going to have to go back in and reassess all of those combination of factors through the eyes of a 13-, 14-, 15-year-old, 16-year-old. It's going to be case law that's going to make it. Why? Why is that? I mean, we've seen two cases that seem like blue moon, once in a blue moon. Alvarado is an odd set of circumstance. And what is the terrible thing, the awful thing that has to happen if the officer isn't sure whether this individual thinks he's in custody or not? Suppose the officer just isn't sure. What terrible thing happens? What is the answer to that question? Roberts. Well, Your Honor, you over-Mirandaize. You Mirandaize. But it's not necessary. The terrible thing that happens is you have to give him a Miranda warning. Now, that is the terrible thing. Now, why is that a burden on the criminal justice system that sometimes in ambiguous circumstances, where because this kid is very young, he might not understand it quite as well, and the officer sees that, the kid sees it, and so the officer has to give him a Miranda warning? Your Honor, there is no such thing. In the criminal justice system, as you can see from my overstatement, I tend to suspect nothing. But you tell me what you think. No, no, a lot. School resource officers, the thousands of them, they're licensed police officers, uniformed police officers who often counsel kids as well as protect the school. Under the Petitioner's theory, a school resource officer who is going to take a juvenile into a room to talk about a stolen cell phone or bullying, the first thing that he's got to say is you have the right to remain silent. Now, that, in my opinion, disrupts the communication. Breyer. Why not the first thing? Hey, kid, we're here talking, but you want to leave, just open the door and leave. Go. Nobody's keeping you here. Now, why isn't that the first thing, if he's really free to go? Well, he may not want him to go, number one. Oh, oh, oh, I see. Well, you know, you want to talk, you want to talk to the kid. But if you have a traffic stop, you don't want to immediately tell the 15-year-old driver you're free to leave, because he's not. It's just like Berkmer. Oh, he's not free to leave. Okay. No. Well, then why not warn him? Well, no, because that's a Berkmer situation, a traffic stop. Mr. Cooper, Mr. Cooper, for search purposes, is age consciousness required? Remember, part of this is the police officer then goes to the boy's home. The police officer is trained to deal with juveniles. And he says to the boy, you can't consent to the search because you're a seventh grader, I will have to get a warrant, so please stay here until I get a warrant. If he can't, if he's not treated like an adult for purposes of the search, if to get the warrant, if the police need a warrant because they're dealing with a seventh grader, why should it be different for in custody for Miranda purposes? Well, Your Honor, I think when you're dealing with voluntariness, when you're dealing with consent to search, when you're dealing with waiver, you are looking at the particular juvenile. You are looking at all of the circumstances. The courts have said that Miranda takes a different care. I thought that all that this police officer was looking at when he said I have to get a warrant is that he's dealing with a seventh grader, not all the circumstances. Very simple. Age. He's under the age of consent. It might have been in the circumstances that he didn't own the house. It was the grandmother who actually owned the house as to why he didn't. He can't consent to a contract. And, Your Honor, you're right. There are other categorical prohibitions on age across the board in our law. But here what we're doing is asking officers to assess each situation based on the particular age of a juvenile, which makes it all the more difficult for the officer. You know, say, for example, you're at a Terry stop and there are a number of juvenile looking people there, and let's say they're 15 to 19, but the officer doesn't know it. He's at the Terry stop. He's going to be faced with potentially Mirandizing some of the people there and not others. That's going to put law enforcement in an untenable situation and make it very complex for them as to when they read Miranda and when they don't. And I think in addition to the solicitor general's view that a blind person should be treated as a blind person for these purposes? I think I do, Your Honor, because And a deaf person should be treated as a deaf person for these purposes? It's an obvious external circumstance. As is youth. As is youth, an obvious external circumstance that this boy was 13 years old. But you don't have to get into the mind of the blind person or the deaf person. The only issue is whether they have acquired the knowledge in order to be able to put it into the mind of the blind person. I don't agree with that. You're trying to understand the situation as the blind person would have seen it or as the deaf person would have seen it or as the 13-year-old would have seen it. And I don't understand why it's different. Well, Your Honor, I think it's different because it has to do with something that is obvious. It is not necessarily obvious how a 13- or 14-year-old would view the situation. And just in the Alvarado opinion, the opinion says that sometimes the permissible objective facts and impermissible subjective opinions sometimes merge. And it's difficult. Scalia's blind person doesn't have a different mind. That's correct. The deaf person doesn't have a different mind. He just has less data, and it's easy to take account of less data. Easier to take account of less data than it is to take account of how different one's mind is because he's 16 instead of 13 or whatever. I think that's the difference between the blind and the deaf, isn't it? I think you're absolutely right. Yes. I'm absolutely right, and yes, too, Your Honor. And I think it's important to note that we have already started going down the slippery slope in a number of States. There have been 11 States, contrary to Petitioner's brief, that are considering other characteristics in Miranda, such as sophistication, such as education, such as intelligence. That makes it so much more difficult. And this Court has not hesitated. It did not hesitate in Alvarado. It did not hesitate in Berkmer to correct lower courts to say we've got to make sure that Miranda is complete, that Miranda stays clear and objective, and that we don't blur the lines. And if the law goes down that route, then one of the chief advantages of the Miranda rule, which is that it's a relatively simple, objective test, is eliminate it, and the law of Miranda begins to resemble the law of voluntariness. And maybe at that point there is no longer a strong argument in favor of Miranda, and the voluntariness test should be the sole test. We support Miranda, Your Honor. We support Miranda in its current form. We think it's appropriate. But I think clearly by adding age into the circumstance, it makes it more complicated. Your Honor, I would request — Justices, I would request that the North Carolina Supreme Court decision be upheld. Thank you, counsel. Mr. Feigin. Mr. Chief Justice, and may it please the Court, there are three primary reasons why age should not be a factor in the Miranda custody test. I think the most important one is this. The only statements that are going to be suppressed under Petitioner's rule that wouldn't already be suppressed by existing doctrine are statements that, first of all, the prosecution has carried its burden. I'm sorry. I just — the only statements that could be suppressed, I just didn't hear. The only statements that are going to be suppressed under Petitioner's rule, which would take age into account, that aren't already going to be suppressed under existing constitutional doctrines, are statements that, first of all, the prosecution has carried its burden to prove are voluntary under a voluntariness test that already takes age into account, and, second of all, are given under circumstances that don't otherwise meet the definition of custody, that is, formal arrest or its functional equivalent. I think that's a relatively small and not a particularly problematic category of statements, and I don't think it's worth complicating the Miranda rule in order to make sure that those statements are suppressed. Breyer, maybe you can explain this to me, too. You have a blind person there. Everyone — you don't know how blind. He's somewhat blind. Deaf person. How hard of hearing? We're not sure. So the policeman goes a little overboard. You are free to leave. Or shows it to him, or makes sure he gets it in. Okay. Why is that so tough to do, where you also have a 12-year-old? If he really is free to leave, just make clear that he knows it. Well, Your Honor, I think the critical difference between blindness, deafness, and other sensory disabilities and age is what Justice Scalia said a few minutes ago, which is that in the case of a blind or a deaf person, you can try to figure out what the circumstances surrounding the interrogation that are observable to that person are. But that's all we're doing with the young person. And, in fact, most of us, many of us, have a great deal more experience understanding the world through the eyes of a young person, our children, perhaps, than understanding the eyes — the world through the eyes of a severely sensory-deprived person. We're asking the exact same thing in both contexts. What is this person think — what is this — what are the objective circumstances appear to a person in this situation? Well, Your Honor, I don't think you're doing the same thing, and I think it's easier to put yourself in the mindset of a person with a sensory deprivation than a person of a particular age, and let me explain why. For a person with a sensory deprivation, like in Justice Breyer's example of the sign that someone can't read, I think it's very common and easy for officers in courts to figure out how they would react to the situation if the sign simply weren't there. With age, what you're asking, perhaps, a 45-year-old officer to do, or in Justice Alito's example, a 60-year-old judge to do, is to put them into the frame of mind of a person that they haven't been for 32 years or 45 years, and I don't think that's a very easy inquiry to ask officers or courts to make. I think this is really going to complicate the Miranda rule by asking them, A, to do that, and, B, because there are going to be many cases, unlike this case, where it's not going to be apparent to the officer what age the suspect is. One thing that comes up fairly commonly in many jurisdictions is that an officer will stop someone on the road, do a traffic stop with someone on the road, the person will claim not to have their ID, and it will turn out the person is 14, and they'll give the name and birthdate of an older sibling. And there's simply no way for an officer in those circumstances to know at the age of the suspect's age. Ginsburg's question is, if we limit it to when age is known, if we limit it to this is an officer who not only knows he's dealing with a seventh grader, but he decides the venue for the questioning is going to be a room in the school, I mean, that's not a mystery, it's not a guess. He knows he's dealing with a seventh grader. He sets it up in the to re-ignore what the investigating officer knows, the investigating officer knows he's dealing with a child. Feigin. Well, Your Honor, I think there are sort of two parts to your question. Let me deal first with a rule that would only apply when officers know the identity or know the age of the suspect. I think that rule would be easier to apply than the rule that Petitioners are suggesting and would mitigate some of the damage. But first of all, it doesn't solve the critical problem of asking officers who aren't themselves 13 to think like someone who is 13. And second of all, I think for reasons that I think were apparent during the argument by my friend on the other side, that rule might easily devolve into a should-have-known test, and officers simply aren't going to be able to deal with that. Scalia. The officer doesn't have to think like a 13-year-old. He has to think the way a 60-year-old judge would think a 13-year-old thought.  Feigin. That's right, Your Honor, and it may depend what the 60 — which particular 60-year-old judge. Breyer. But that isn't to me, anyway. That's not the question. I don't think anybody's asking anybody to think like anything else. All it is, when you face a younger child and he is free to go, and you mean he's free to go, you just sort of err a little bit on the safe side and make sure he understands it. That's all. Nobody has to think like anybody. All they have to think is let's err somewhat on the safe side. Now, why is that tough? Well, Your Honor, I think that the main problem here is that it's going to create more confusion for officers because it's another factor they have to put into the test. Why don't we require, Miranda, always? Is there any harm in requiring always? It never — it's always easy to do. Why don't we require it all the time? Can you tell us why it makes a difference? I think it's very unrealistic that every time an officer opens their mouth, they have to give Miranda warnings. And I think it would fundamentally change the nature of police interactions with the public. The Court's — and the other reason the Court has never required it is that voluntary statements the Court made clear in two cases last term, again, Maryland v. Schatzer and Bergwies v. Tompkins, are a good thing. And their voluntary confessions are a good thing. They're very helpful for law enforcement. And there's no reason to — I'm sorry. Do you think that a person with Down syndrome, that that should be taken into account in this inquiry? I'm not sure how that would be taken into account, Your Honor. To the extent that someone with Down syndrome thinks differently from someone who doesn't have Down syndrome, I think that would be very relevant to the voluntariness test, but would not be relevant to the custody test, because it's going to be, again, very difficult to ask an officer to put themselves in the mindset of someone who has Down syndrome. I think the third problem— Sotomayor, how is that different than blindness or hearing? A person with Down syndrome, many, some don't, show characteristics that they're not capable of comprehension or not capable of absorbing information. They barely look at you. They barely — you know, there are characteristics that show you a lack of absorption of information. Your Honor, I may have difficulty dealing with this particular hypothetical because of my lack of knowledge of the particular symptoms of Down syndrome. But if you're dealing with a suspect who simply can't absorb information about the world, then that's going to be a sensory deprivation that's going to be taken into account, because it's going to subtract circumstances away that that suspect can't perceive. But if you're asking about the mindset of someone who has a particular sensory disability, then no, I don't think that would be taken into account, because it's asking too much of officers to try to put themselves in that mindset. And the third problem, I think, with factoring age into the custody test is that — and as I think Petitioner has effectively conceded, it creates a slippery slope problem. There really isn't a clear distinction between age and other things, such as mental disorders or cultural background, that defendants also will argue change whether they believe that they've been subject to a formal arrest or it's functional. We don't want Miranda warnings to be given where they are unnecessary, because they are only necessary to prevent coercion. And where there's no coercion, we want confessions, don't we? And Miranda warnings deter confessions. That's right, Your Honor. Isn't that the basic reason? That's right, Your Honor. So it's not cost-free to require Miranda warnings. It's a good thing to have the bad guys confess that they're bad guys, right? That's right, Your Honor. That's what I was trying to say earlier. Before you — you are so quick to answer that's right. Isn't it so that the manual that this very officer was given to use said, before you question the child, give Miranda warnings? Yes, it did, Your Honor. So currently the people who train these juvenile officers think it's a good thing, not a bad thing, to give a Miranda warning. Well, one reason they may think it's a good thing, and one reason I think the Court doesn't need to adopt Petitioner's rule here, is that officers often will give Miranda warnings, precisely the reasons Justice Sotomayor was suggesting earlier, which is that when officers do give Miranda warnings, it's going to be — and those Miranda — the Miranda procedures are all validly followed. There's not going to be a real robust voluntariness inquiry, because in most cases where the Miranda procedures have been followed, the statements are going to be found to be voluntary under the voluntariness test. Now, if I could actually add an answer to Justice Scalia's earlier question, Miranda isn't simply concerned with coercion. The Court made very clear in Oregon v. Mathiasson that Miranda isn't attempting to capture every quote, unquote, coercive environment. What Miranda is directed at is a specific environment — thank you. Roberts, you can finish your sentence. Specific environment, namely custody, which is defined as a formal arrest or its functional equivalent. Thank you. Thank you, counsel. Ms. Blackman, you have three minutes remaining. I think what's very odd in this case is that the only party that didn't consider JDB's age was the courts. I mean, it was clearly being taken into account by Officer DeCostanza, and JDB was fully aware of his own age. And under Thompson v. Cohane, what a reviewing court is supposed to be doing is immersing itself in the actual circumstances of the case. And without this consideration of age, then the courts are examining hypothetical — hypothetical interrogations and not the one that was actually occurring in the case. Officers have to make judgments about every objective circumstance that arises, and asking them to make objective determinations on juvenile status is no different and is not going to muddy the water. I think, as Justice Kagan pointed out, custody is a very difficult issue. It's not subject to bright-line rules. But we can't be defining it in such a way where we are requiring these children to be someone that they never could be, and that is reasonable adults. If our goal here is to ensure reliability of fact-finding, reliability of statements, if we want to reduce the coercion to which our citizens are entitled, then this rule needs to be put into play. And we ask that the North Carolina Supreme Court decision be reversed. Thank you. Roberts.